United States District Court
Southern District of Texas
**ENTERED**
March 12, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS E. CANTU, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 4:24-cv-2447 |
| HARRIS COUNTY, TEXAS, UNITED | § | |
| AIRLINES, INC., UNKNOWN OFFICERS, | § | |
| and UNKNOWN AGENTS OF HARRIS | § | |
| COUNTY, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before this Court is Harris County, Texas's ("Harris County") 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. No. 8). The day after that motion was filed, Carlos E. Cantu ("Plaintiff") moved to stay proceedings for 60 days to give his attorney time to apply for reinstatement of his license to practice in the Southern District of Texas, which was terminated 15 years ago. (Doc. No. 9). On July 30, 2024, the Court granted the Motion to Stay. (Doc. No. 11). The 60-day stay expired on September 28, 2024, and after almost six months, Plaintiff still has not filed anything with the Court, let alone responded to the Motion to Dismiss. Consequently, the Court deems the Motion to Dismiss unresponded-to and unopposed. *See* S.D. Tex. L.R. 7.4 ("Failure to respond to a motion will be taken as a representation of no opposition."). Nevertheless, since it is a motion to dismiss, the Court must address merits of the motion. Having considered the merits of motion and the relevant pleadings, the Court **GRANTS** Harris County's Motion to Dismiss. (Doc. No. 8).

I.      **Background**

This is an apparent case of mistaken identity. Plaintiff alleges that, on June 27, 2023, he and his wife went to George Bush Intercontinental/Houston Airport to fly out to Cancun, Mexico to celebrate their anniversary. (Doc. No. 4 at 3). Once at the gate, Plaintiff scanned his boarding pass to board the plane but was stopped and detained by two peace officers. (*Id.*). The officers apprised Plaintiff that he had an outstanding warrant for aggravated assault against a family member with a deadly weapon. (*Id.*). Subsequently, he was handcuffed and taken to a "retention area," where he was searched. (*Id.* at 3–4). Plaintiff alleges that he "repeatedly informed officers that they had the wrong person," but an officer told Plaintiff that there were "two warrants and they were attached to his driver's license." (*Id.* at 4). The officer allegedly further informed Plaintiff that Plaintiff's driver's license—used to check into the flight—was the sole link to those warrants. (*Id.*).

Thereafter, officers from the Harris County Sheriff's Office arrived at the airport and arrested Plaintiff pursuant to those arrest warrants, but allegedly did not read him his Miranda rights. (*Id.*). Plaintiff once again objected, telling the officers they had the wrong person. (*Id.*). Nevertheless, Plaintiff was taken to the Harris County jail. (*Id.*).

On June 28, 2023, the next day, Plaintiff was released for lack of probable cause. (*Id.* at 5). On June 30, 2023, the case against Plaintiff was dismissed for lack of probable cause. (*Id.*). It was later discovered that the warrants were outstanding against a Carlos *Roberto* Cantu, not Plaintiff—Carlos *Enrique* Cantu. (*Id.*).

Based on the foregoing turn of events, Plaintiff purports to bring six causes of action: (1) violation of 42 U.S.C. § 1983 against Harris County, Unknown Officers, and Unknown Agents; (2) violation of 42 U.S.C. § 1985 against Harris County, Unknown Officers, Unknown Agents, and

United Airlines (collectively, "Defendants"); (3) wrongful arrest against all Defendants; (4) libel and slander against all Defendants; (5) *res ipsa loquitur* against all Defendants;[1] (6) negligence against all Defendants; and (7) gross negligence against all Defendants. Harris County, through the present motions, seeks to dismiss all of Plaintiff's claims.

## II. Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual

---

[1] As explained below, *res ipsa loquitur* is "simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence." *Pearson v. BP Prods. N. Am., Inc.*, 449 F. App'x 389, 391 (5th Cir. 2011) (citing *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982)). The Court lists it here simply to outline Plaintiff's assertions.

allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III. Analysis

#### A. Service of Process on Defendants

Plaintiff's First Amended Complaint is less than clear in its description of who are joined as defendants. To be sure, Harris County was properly served, (Doc. No. 1-2 at 2), and has filed a motion to dismiss, in lieu of an answer, (Doc. No. 8). As to the rest of the purported defendants, while the caption lists Harris County, United Airlines, Inc., Unknown Officers, and Unknown Agents of Harris County as defendants, the opening paragraph states that Plaintiff is filing this suit "complaining of Harris County, Texas ("Harris") and United Airlines, Inc. ("United") (hereinafter "Defendants")" under various causes of action, but is silent as to any claims against Unknown Officers and Unknown Agents. (Doc. No. 4 at 1). Conversely, under the headers "Parties" and "Causes of Action," Plaintiff lists all four groups of defendants. (*Id.* at 1–2, 5–10).

That Plaintiff pleads causes of action against all four groups of defendnats may suggest that there was a simple editing error in the opening paragraph, were it not for the fact that nothing in the record shows Plaintiff ever requested the issuance of summons against the Unknown Officers or Unknown Agents, pre-Rule 26(f)-conference discovery on their identities, or extension of time to serve them. Even as to United Airlines, Plaintiff simply asserts in his Complaint that he "is requesting citation for this Defendant." (Doc. No. 4 at 2). That, however, is not the proper way to request a summons. *See* S.D. Tex. L.R. 4 ("Parties other than prisoners must provide completed summons forms for issuance by the clerk."). Consequently, Plaintiff has failed to timely serve them—even ignoring the 60-day stay. Thus, all Defendants other than Harris County are dismissed from the case for failure to timely serve process. *See* FED. R. CIV. P. 4(m).

### B. Section 1983 Claim

Municipal liability under § 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). In turn, there are three ways of establishing a municipal policy for establishing liability under *Monell*. First, a plaintiff can show written policy statements, ordinances, or regulations. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019). Second, a plaintiff can widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Id.* at 2015. Third, a plaintiff can rely upon a single decision as municipal policy in rare circumstances when the official or entity possessing final policymaking authority for the action performs the specific act that forms the basis of the § 1983 claim. *Id.* at 215.

Here, Plaintiff alleges that "all of the Harris County Defendants were acting pursuant to its policy to arrest individuals with an active warrant." (Doc. No. 4 at 12). As such, he argues, "Plaintiff's rights were violated as a result of the County's policy and practice of charging, detaining, arresting, and prosecuting individuals with active warrants for the safety of the County's citizens." (*Id.*). If this allegation is taken as true—that officers were merely executing a valid, active warrant for the safety of the County's citizens—it might constitute an official policy, perhaps even a wise and obvious one. Plaintiff, however, fails to plead sufficient facts to support the other two elements of his *Monell* claim: that there was a policymaker and that the policy was a moving force behind his alleged constitutional violations. In fact, Plaintiff's Complaint fails to allege any policymaker or decisionmaker.

5

Even if the Court infers from the alleged existence of a policy the existence of a policy *maker*, Plaintiff cannot show that this policy led to a violation of his constitutional rights. The Supreme Court made clear that "when the police have probable cause to arrest one party," like they did here, pursuant to the outstanding warrants, "and they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971). The Fifth Circuit, too, has reiterated this rule, holding that "the Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person." *Harris v. Payne*, 254 F. App'x 410, 416 (5th Cir. 2007) (quoting *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994)). Here, the officers had a reasonable, good faith belief that they were arresting the correct person because the system on which they relied notified them that Plaintiff's driver's license was connected with the outstanding warrants.

True, the warrant itself lists the suspect's date of birth and driver's license number, which presumably would not match Plaintiff's, and thus, the officers and agents could have used that information to verify Plaintiff's claim of mistaken identity. Nevertheless, the Fifth Circuit held in *Harris* that officers' reliance on statements by the Harrison County Adult Detention Center to establish the arrestee "was the proper individual is reasonable, even if they could have taken other reasonable actions to verify [the arrestee's] identity." *Id.* Here, too, the officers' reliance on the law-enforcement computer database to establish that Plaintiff was the proper "Carlos Cantu" was reasonable, even if they could have taken other reasonable actions to verify the true suspect's identity vis-à-vis Plaintiff's. This is especially true when there is no allegation that they had a copy of the arrest warrant with which to compare Plaintiff's and the suspect's dates of birth and driver's

license numbers. Therefore, Plaintiff fails to state a claim for relief under § 1983. That claim is dismissed.

### C. Section 1985 Claim

That lack of a pleaded constitutional violation is also fatal to Plaintiff's § 1985 claim. To state a claim under 42 U.S.C. § 1985(3),[2] Plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). In so doing, Plaintiff must show that the conspiracy was motivated by a class-based animus. *Id.* at 653.

Plaintiff alleges that Defendants conspired, directly or indirectly, to deprive Plaintiff of his right against illegal searches and seizures—but, as explained above, the seizure was reasonable and not in contravention of the Fourth Amendment. If the seizure was proper, then so was the search. *See United States v. Robinson*, 414 U.S. 218, 235 (1969); *United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994). Thus, he cannot make out the fourth element of an alleged § 1985 conspiracy.

More fundamentally, Plaintiff fails to allege any agreement, the bedrock of a conspiracy. *See Cantu v. Moody*, 933 F.3d 414, 420 (5th Cir. 2019) (requiring allegations of an agreement to state a claim under § 1985(3)). The extent of Plaintiff's factual allegations on this claim is that "[a]lthough the Plaintiff doesn't know exactly what happened, he does know that something in the United System(s) caused a hit or link to Carlos Roberto Cantu's warrants and resulted in his

---

[2] Plaintiff does not specify which subsection of § 1985 Defendants allegedly violated. Subsections (1) and (2), however, are inapplicable here, with the former prohibiting the prevention of an officer from performing his duties and the latter the obstruction of justice including by intimidation of parties, witnesses, or jurors. *See* 42 U.S.C. § 1985(1)–(2). Thus, the Court presumes Plaintiff is asserting a § 1985(3) claim.

7

wrongful arrest." (Doc. No. 4 at 5). This allegation is insufficient to set out any agreement nor does it give rise to an inference of an agreement.

Missing, too, is any allegation of class-based animus, as required in this circuit for § 1985(3) claims. *See Hilliard*, 30 F.3d at 653. Specifically, "in this circuit . . . the only conspiracies actionable under section 1985(3) are those motivated by racial animus." *Cantu*, 933 F.3d at 419. Plaintiff's Complaint is devoid of any allegations of racial animus or class-based animus generally. *See generally* (Doc. No. 4). Therefore, Plaintiff's § 1985 claim is dismissed.

### D. Wrongful Arrest Claim & Libel and Slander Claim

Plaintiff brings a claim for wrongful arrest and for libel and slander. (*Id.* at 8–9). He claims that Defendants "caused the willful, purposeful and wrongful, wanton [and] malicious, unreasonable and fraudulent search, seizure, and/or detention/confinement of the Plaintiff." (*Id.* at 8). He also claims that Defendants' alleged statements that Plaintiff was involved in or was the person that committed the aggravated assault was actionable defamation. (*Id.* at 9).

To the extent that Plaintiff's wrongful arrest claim is a constitutional one, it fails. There is no cause of action for wrongful arrest arising directly from the Constitution because there is an adequate alternative avenue—a § 1983 claim. *See Hearth, Inc. v. Dept. of Pub. Welfare*, 671 F.2d 381, 382–83 (5th Cir. 1980). As mentioned above, Plaintiff has not stated a § 1983 claim against Harris County.

Even when viewed as a state-law claim, Plaintiff's wrongful arrest claim, and, for the same reason, the libel and slander claim, cannot proceed. The Texas Tort Claims Act governs governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.025. While it waives governmental immunity for some claims, *see id.* § 101.021, it expressly retains some for others, including for claims "arising out of assault, battery, false imprisonment, or any other intentional

8

tort," *id.* § 101.057(2). Plaintiff's "wrongful arrest" claim is substantively the same as a false imprisonment claim, which is expressly barred by the statute. *Id.* Moreover, "defamation is an intentional tort, *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995), [and therefore, Harris County] is immune from claims arising out of allegedly slanderous statements by its agents or employees." *Jackson v. Tex. A&M Univ. Sys.*, 975 F. Supp. 943, 946 (S.D. Tex. 1996) (Atlas, J.). Thus, Plaintiff's intentional tort claims are dismissed.

### E. *Res Ipsa Loquitur*, Negligence & Gross Negligence

Plaintiff purports to bring a cause of action for *res ipsa loquitur*, negligence, and gross negligence. (Doc. No. 4 at 9–10). Regarding his so-called *res ipsa loquitur* cause of action, Plaintiff claims that "the arrest and detention of the Plaintiff would not have occurred in the absence of negligence and in this case gross negligence." *Res ipsa loquitur*, however, is "simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence." *Pearson*, 449 F. App'x at 391 (citing *Jones*, 638 S.W.2d at 865). Thus, that purported cause of action is dismissed.

Plaintiff's negligence and gross negligence claims, though recognized causes of action, fare no better. "The Texas Tort Claims Act . . . does not waive sovereign immunity from liability for gross, as distinguished from simple, negligence." *Hockaday v. Tex. Dept. of Crim. Just., Pardons & Paroles Div.*, 914 F. Supp. 1439, 1447 (S.D. Tex. 1996); *see also Port of Houston Auth. v. Aaron*, 415 S.W.3d 355, 365 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("TTCA does not waive immunity for gross negligence or deliberate indifference.") (quoting *Gay v. State*, 730 S.W.3d 154, 158 (Tex. App.—Amarillo 1987, no writ)). Thus, Plaintiff's gross negligence claim fails.

Conversely, the Texas Tort Claims Act *does* waive sovereign immunity for simple negligence, but it does so in very limited circumstances. Texas Civil Practice and Remedies Code § 101.021, which waives governmental liability, reads:

> A governmental unit in the state is liable for:
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>    (B) the employee would be personally liable to the claimant according to Texas law; and
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021.

Plaintiff's allegations do not fall into either category of governmental immunity waiver. First, subsection (1) does not apply because Plaintiff does not allege any personal injury from "the operation or use of a motor-driven vehicle or motor-driven equipment." Second, subsection (2) does not apply because his purported injury was not caused by "a condition or use of tangible person or real property." Indeed, the First Court of Appeals sitting in Houston expressly rejected the notion that the use of information obtained from a computer or a computer printout constitutes the use of tangible personal property that would governmental immunity. *Sawyer v. Tex. Dept. of Crim. Just.*, 983 S.W.2d 310, 312 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (rejecting "claims premised on the use of computers . . . as constituting use of tangible personal property under the Texas Tort Claims Act"). It explained that "[i]nformation or misinformation remains *information*, whether it is transmitted by electronic equipment or by word of mouth." *Id.* (emphasis in original). Thus, the *means* of communication "does not alter its intangible nature." *Id.* It ultimately held that the governmental entity "did not waive the sovereign immunity afforded by the Texas Tort Claims Act through the erroneous use of information contained in the computer or

10

the computer printout." *Id.* This Court reaches the same result here. Harris County did not waive its governmental immunity by its allegedly erroneous use of its computer system. Plaintiff's negligence claim is dismissed.

### IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Harris County's Motion to Dismiss. (Doc. No. 8). Plaintiff's § 1983, § 1985, wrongful arrest, libel and slander, *res ipsa loquitur*, negligence, and gross negligence claims against Harris County are **DISMISSED**.

Moreover, the remaining Defendants—United Airlines, Unknown Officers, and Unknown Agents of Harris County—are **DISMISSED** due to Plaintiff's failure to timely serve process.

All other pending motions are **DENIED** as moot.

Signed on this 13 day of March 2025.

Andrew S. Hanen
United States District Judge

11